Oyez, Oyez, Oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention. So the Court is now sitting. God save the United States and this Honorable Court. All right. Good afternoon, everybody. Please be seated. Welcome to the United States Court of Appeals for the Fourth Circuit. We have one case on for hearing this afternoon, 24-2044 and 24-2045, RNC v. North Carolina State Board of Elections. Before we begin, I want to thank counsel for their excellent briefs under fairly compressed time frames. We really appreciate your attention to this interesting and somewhat confounding matter. Ms. Boyce, whenever you're  ready, you may begin. May it please the Court, my name is Sarah Boyce on behalf of the North Carolina State Board of Elections. I just filed suit in state court and raised two state law claims. But an essential element of each of those two claims requires the plaintiffs to prove that the state board violated a federal law, the Help America Vote Act or HAVA. The court below understood the significance of HAVA to plaintiff's first claim and concluded that it was therefore properly removed. But the court came to a different conclusion when it came to count two and remanded that claim to state court. This was error. The state board properly removed both count one and count two on two independent grounds. First, just like count one, count two arises under federal law because it necessarily raises a substantial and disputed federal question that is best resolved by the federal courts. Second, the state board properly removed count two under the refusal clause of section 1443 because the state board has refused to purge voters on the basis that doing so would violate the National Voter Registration Act. That particular act was enacted to, quote, eliminate discriminatory and unfair registration laws and procedures, end quote, that, quote, disproportionately harm various groups including racial minorities. For that reason, it qualifies as a law providing for equal rights under section 1443-2. Because the district court wrongly concluded that it lacked federal jurisdiction over count two under each of these statutes, its remand order should be reversed and the case should be sent back with instructions to take up the merits of count two and to do so expeditiously with election day now just a week away. Ms. Boyce, can I ask you a question about the additional issue that we asked the parties to be prepared to discuss? And that's the question of article three. Of course, your honor. I expected to start there. So given that we have premised our position on the fact that this court has subject matter jurisdiction, I imagine you will not be surprised to hear that we do, in fact, believe that the plaintiffs have article three standing here. I'll delineate to some extent between the allegations they've raised that we do think give them standing and those that we don't. So before you get to that, do you agree that it's appropriate to consider that before we get to these other issues? Yes, your honor, we do. Okay. Go ahead. So they've asserted two different bases for standing, associational standing and organizational standing. We do not believe that they have associational standing because those are mostly premised on their vote dilution allegations, which we believe are speculative and generalized. We do, however, believe that they have organizational standing. Your honors have pointed our attention to the Alliance for Hippocratic Medicine case from the Supreme Court, and I agree that that is an appropriate place to start. We have that case on one hand and the Havens Realty case on the other, and I think the question is whether it's more like Alliance for Hippocratic Medicine or Havens Realty. As I understand Alliance for Hippocratic Medicine, that imposed two new rules or clarified two things about standing for purposes of organizations. One, they cannot allege some vague interest to an objective or a mission. They must instead allege a specific injury to their core business activities. And two, they cannot allege that they will divert resources to some new activity in response to challenged conduct. So those are the two things that seem to disqualify plaintiffs from organizational standing. In other words, they can't spend their way into federal court, right? They can't. So isn't that what's happening here? No, Your Honor, I don't think that it is in this particular instance. So I'll move quickly to the Havens Realty case. What Havens Realty says is that if the defendant's actions have directly affected and interfered with the plaintiff's core business activities, that is sufficient. And here, if we look at paragraphs 15 and 16 of the complaint, I guess 12, 14, and 15 are the most relevant provisions, the plaintiffs have alleged that their core business activities include organizing lawful voters, encouraging them to support Republican candidates, counseling interested voters and volunteers on election participation, providing services aimed at promoting Republican voter engagement. So here they have alleged specific core business activities as opposed to generalized aims and objectives. And then they have included specific allegations that those particular business activities have been directly impaired. And that would seem to map on perfectly to the situation that occurred in Havens Realty. In Havens Realty, as I'm sure Your Honors know, they had a counseling business that they used to advise minority groups about the best way to secure housing. And in that case, they alleged that various apartment complexes had been giving false information about the availability of certain apartments, which made it then harder for them and more burdensome for them to give counseling advice. So to here, in the paragraphs of the complaint that I have laid out, the plaintiffs have alleged that they essentially run a counseling service for voters and for candidates about the best way for Republicans to succeed and prevail in elections. And they allege that the so-called misconduct of the state board has made their job more burdensome and has significantly stymied, I believe they say in 15, those core business activities by, for instance, making it unclear as to which voters they need to target because they don't know presumably which voters are in fact qualified to vote and whose ballots will be counted. Can you tell me what the, why the three district court cases that we also cited in that order asking for your thoughts, where they went astray? So I think it is... Or if they did. I mean, maybe the facts are different. I do think that they're distinguishable from this case, Your Honor, and some of it requires parsing the complaints in those particular cases. But one thing that they especially seem to take issue with in those cases is whether or not the claims about a diversion of resources were speculative. And here, there is no allegation, well, there are allegations that they will have to divert resources, but there are also allegations that they have already been expending additional resources and that their activities have already been significantly stymied. So one thing that seemed especially troubling to those courts was the speculative nature about whether in fact resources would be diverted in the future. So beyond stating that kind of truism, what activities and what resources have been diverted as alleged by the complaint? Well, so I think under the Havens Realty standard, simply making clear that their activities have been stymied is enough. And again, they have laid out that it is their providing services aimed at promoting engagement, it is their organizing of lawful voters, it is their counseling of interested voters. And that's not hard to imagine, Your Honor, if you think about the kinds of communications that all of us are receiving in the run-up to this election. I imagine Your Honors are receiving the same kinds of text messages that I'm receiving, mailers that I'm receiving. And I believe the best way to read their complaint is to understand that because they're not quite sure who to target. Depending on where you live, I suppose, maybe my colleagues aren't getting as many as we are. Perhaps, perhaps, that's true. But, Your Honor, it's not hard to imagine, and what their complaint seems to be suggesting is that the cloud of uncertainty that surrounds the voters in this particular case, and whether in fact they count as qualified voters, is forcing them to expend more resources, casting a broader net, than they might otherwise have to do. So how is that different from the allegations that the medical associations alleged in Hippocratic Madison? Because, Your Honor, I think what the Supreme Court took issue with there is that they were diverting resources to do new things that were not core business activities. So, for instance, one of the examples they gave was now they were having to put together educational packets and training materials about the dangers of Mifepristone. So that was not something they had previously done before, but they were now doing that. And they also alleged that they were expending significant resources trying to put together a case to then be brought in litigation to attack Mifepristone. That's not what, there are allegations, to be fair, in this complaint that make similar assertions here. They do say that they've had to spend money gathering evidence of fraud to hold the Board of Elections to its duty, but they also do include, excuse me, allegations of the nature in Havens Realty that says they were diverting resources to ongoing, pre-existing business activities. And I think that's the critical distinction between Hippocratic Madison and Havens Realty. Were the core business activities already ongoing, or are they new things that are simply a reaction to the challenge conduct? Now, you know, I took up all of your time with respect to the standing question, and I realize that was thrown at you at the last minute. So I do want you to go ahead and make your argument with respect to the other issues, the principal issues that are before us. Sure, Your Honor. Would you like me to briefly touch on the appellate jurisdiction question as well, or have Your Honors been satisfied with the briefing in that instance? I have a question about Section 1443 and the race issue. How granular should our inquiry be there? Do we need to look whether race is explicitly mentioned in the cited statute? Your Honor, I don't think it's clear that you do have to look to see whether race is specifically mentioned. I don't believe that the U.S. Supreme Court's decision in Georgia v. Rachel actually says that the statutory text explicitly has to mention race, though of course here, the statute that we're talking about, the National Voter Registration Act, does in fact explicitly mention race in its findings in the initial section of that act. So I think that either way it's not dispositive here, but no, I don't believe that the U.S. Supreme Court has ever imposed a rule that says the text itself has to mention race. I think the purpose of the statute certainly needs to be a purpose of mitigating or remedying racial discrimination, but it does not have to be in the text of the statute itself, and it certainly does not have to be in the specific section within the broader law that is invoked, and I think that's clear from the U.S. Supreme Court's decision in Georgia v. Rachel. It's also clear in the City of Greenwood case v. Peacock, where both of those U.S. Supreme Court cases conclude that a law providing for equal rights is implicated, even though the specific provision that was being relied on in those cases did not itself explicitly mention racial minorities. So our view is that the district court grafted that particular requirement on, and it's particularly telling that the district court now analyzed in Section 10101 of the Voting Rights Act, the materiality provision, and concluded that that particular provision did not constitute a law providing for equal rights, because that runs directly counter to what the U.S. Supreme Court found to be a law providing for equal rights. And so, again, we know from that decision and from Georgia v. Rachel that it is not a requirement of 1443-2 that the law itself expressly discuss racial minorities within that particular provision. I'll skip appellate jurisdiction unless there are further questions about that, and I'll touch briefly on Section 1441. I think the best way to walk through the Section 1441 analysis is, again, to look directly at the complaint, which I think the most relevant pages there are page 39 of the JA, pages 18 and 19 of the complaint. That's where the plaintiffs set out Count 2, their state constitutional claim. And if you look at this, I guess backing up one step, this is after the plaintiffs have invoked HAVA upwards of 50 times throughout this complaint and have made clear that the key question for purposes of resolving this case is whether HAVA has in fact been violated by the state board. So, having repeatedly cited HAVA, they then move on to their state constitutional claim again on JA 39. They incorporate all of those prior provisions by reference, all of those prior citations of HAVA. And then their first allegation says that the defendants have a nondiscretionary statutory duty to maintain the state's voter rolls in a manner compliant with Section 303 of HAVA. They then go on to cite a state law, which they immediately concede does little more than incorporate Section 303 of HAVA. And then they, in paragraph 94, state that by violating HAVA, by allowing these ineligible persons to vote, the defendants have ignored their statutory and constitutional duties while opening the door to potential widespread dilution. We of course disagree with those allegations, but the point is the only way that the plaintiffs will be able to prevail in proving their state constitutional claim is if they prove this predicate issue of the fact that the state board has violated HAVA. So, under the gun and gravel precedence, the relevant question here is whether or not plaintiff's theory will require them to prove an issue or a substantial and disputed issue of federal law. And as this particular articulation of their claim makes clear, they cannot prevail on their state constitutional claim without first proving that there was in fact a violation of federal law here. Their entire theory of vote dilution falls apart if in fact they are unable to prove that there was a HAVA violation here, because of course that would mean that there were no illegal votes and thus no vote dilution. The key issue that the district court seemed to get hung up on was the question of whether or not resolving a state constitutional claim was going to throw off the federal-state balance. And for precisely the same reasons that the court found that it would not upset the federal-state balance to resolve count two, we do not think it would upset the state-federal balance for this court to resolve or for the district court to resolve count two as well. I think I said that backwards. Count one and count two, same thing, basically. What the court said in resolving count one was that Congress, in enacting HAVA, made clear that the federal courts are the appropriate forum for resolving statutory questions about construction for that particular statute. And we know that in part because the Attorney General is the individual who is authorized to enforce HAVA and any claims brought by the Attorney General are directed to federal court. So in that provision alone, Congress has signaled that federal courts are the best forum for resolving questions about how HAVA should be construed. The simple fact that the plaintiffs have cloaked their HAVA claim within and embedded it within a state constitutional law claim does not change the fact that the key inquiry here for purposes of proving their state constitutional claim is whether or not HAVA has been violated. And for that reason, we would submit that Section 1441 did give the district court jurisdiction and that the claim should have been, should have remained in federal court. I'm happy to keep talking, but I'm also happy to... Thank you, Ms. Boies. ...just to... We'll hear from your colleague. ...cede my time. Thank you, Your Honors.  Good afternoon. May it please the court, I'm Seth Waxman. I'm representing the Intervenor Democratic National Committee. I certainly hope the court will have some questions for me because much of what I was going to say, unsurprisingly, Ms. Boies said better than I can say. I think in light of the court's questions, particularly the Chief Judge's questions about Article III, I probably ought to spend just a few minutes laying out what our view is and addressing Your Honor's question about the three district court cases that you directed our attention to. You might want to move that mic a little bit closer to you, Mr. Waxman. I think I'll be easier to move than the mic. There you go. We think, may it please the court, the Article III question posed by this court was answered by the U.S. Supreme Court in Crawford v. Marion County Election Board. In that case, the Democratic Party's standing was hotly contested at all three levels, the District Court, the Court of Appeals, and the Supreme Court. But all nine justices, both the justices in the majority and in the dissent, agreed that the Democratic Party indeed had standing to contest a state voting procedure. And that's entirely consistent, we believe, with the Alliance for Hippocratic Medicine because the political parties here clearly meet the Havens Realty test as it was narrowed and explicated in Alliance. In the Havens Realty case, standing was predicated solely on the plaintiff's operation of what the court referred to as a housing counseling service. Here, the political parties plainly operate a voter and candidate counseling service, helping Republicans vote and making sure their votes are properly counted, and advising and assisting Republican candidates in doing exactly the same thing. And that's, I think, very well explicated in paragraphs 15 and 17 of the complaint in this case. So can I ask, do you think an individual voter would have standing to challenge? I don't think an individual voter would have standing because it would be, as my colleague said, it would be predicated on a theory of vote dilution, which generally has been understood to be a generalized, nonspecific claim. I recognize that there is Fourth Circuit law to the contrary. So if we're talking about, so if there is standing, it's not because of any associational standing, but simply because of the organization's core mission, in your view? I'm wary of telling this court that it should ignore its prior precedent in Hall versus Virginia, and there are district courts, Green versus somebody or other, that have applied that standard. I think, generally, the rule as I understand it is that vote dilution claims are generally recognized in redistricting cases, where that is what the whole claim is about, but not in cases involving state procedures, and we're not advocating standing there. I would say that there is an additional ground of standing here when political parties are standing, which is, as several courts of appeals have recognized, the political parties have competitor standing, just as businesses often have competitor standings. We are in the business of competing with each other for votes and for candidates, and I direct the court's attention to the Ninth Circuit's decision in Macinis versus Hobbs, and the Seventh Circuit's decision in Fulani versus Hogsett. Sorry, I don't have the citations with me right here, but I'm confident I know the names of the cases. With respect to the three district courts, I mean, the court pointed us to the Alliance case, a Ninth Circuit case, and three district court cases. Since Your Honor asked about the district court cases, I think I'll start by addressing them. One of them, which is Strong Communities versus Ricker in the District of Arizona, is not really a question, doesn't really raise a question of organizational standing. It was a question of vote dilution, and the court found, as we've previously discussed, that there's no, the Alliance in that case, Strong Communities Foundation of Arizona, didn't have a representational standing on behalf of its members because the members' alleged injury was vote dilution. In the Northern District of Illinois case, Republican National Committee versus Benson that the court cited, I think it's distinguishable in three respects. First of all, the relevant allegations in Benson, which was a case I actually represented the Democratic Party in, were expressly stated in what the court called speculative terms. The RNC alleged, made allegations about what it might do absent judicial relief, not what it had done or will do. In contrast, the complaint here alleges what the plaintiffs have had to do already and will do absent the relief. For pleading purposes, that's the difference between a concrete injury that has already occurred and a speculative one that might have occurred. The other difference here- Let me ask you about that because they do make allegations of diverting resources and combating election fraud, but is it clear that it's tied to this particular issue or is it just the general mission of the party to combat fraud? That seems pretty speculative and generalized to me. I would rely on the plaintiffs' own words in paragraph 15 of their complaint, in which they explain why they have organizational standing. They say that the defendant's violations of HAVA has forced plaintiffs to divert significantly more of their resources to combating election fraud. The plaintiffs' organizational and voter outreaches have been and will continue to be significantly stymied. As a result, plaintiffs have no choice and will need to commit additional time and resources. In paragraph 17, they explain how they have been further harmed in connection with what has been visited on them in connection with their, quote, party-based primary system. That is the primary election that has already occurred earlier this year. And that's another distinction with Benson, where there was no such allegation of any harm that had already occurred. And third, in terms of distinguishing Benson, this was a pleading in state court, which doesn't have to allege Article III standing. We're now here in federal court. And there plainly is a case or controversy before the court. The plaintiffs contend that they are injured by the status quo. The state board and we argue that we'd be injured by its disruption. These are competing contentions of injury that are concrete, specific, and redressable. Nobody is seeking an advisory opinion. And in this regard, I mean, maybe this is, I sort of feel like when the court posed these questions, I entered like civil procedure like 2015 in terms of a level of sophistication. But I am not clear at all that the relevant question is whether the original plaintiffs now defend now appellees have to have Article III standing or whether it is the appellants that do. You know, ordinarily, we are the ones who were moved to federal court. It's our burden to show that the federal court has Article III jurisdiction, just as in the case in which there's an intervener defendant like the Democratic Party is here. There's an adverse decision below and only the intervener appeals. It's the intervener that has to show Article III injury, redressability, and causation in order to pursue an appeal. And here, I don't think our argument turns on this, but it's not clear to me that the appellate jurisdiction, that it has actual standing, Article III standing here. I can't cite you any cases directly or to the contrary except for the cases involving intervener defendant standing where to be an intervener defendant, you don't have to show Article III harm. But if you are appealing as the intervener defendant, you do. Now, you know, I think it's fair to say that this is a very unusual case with respect to standing because I don't know what your friend on the other side is going to say, but you probably made the argument as effectively as anyone can in support of a proposition that maybe they don't agree with. Well, Mr. Strzok, my friend Mr. Strzok and I had a lovely conversation in advance of this argument, but we didn't talk about the argument at all. He has filed a complaint in this case that in multiple paragraphs affirmatively asserts organizational standing. I think it's fair to say that if the Republican National Committee or the Republican Party of North Carolina stood up here and said that it did not have standing in federal court to pursue claims about state voting procedures, it would be making nationally significant news that probably would come back to bite them and a whole lot of litigation that's already occurred. Well, that's the reason why we raised this issue to begin with is that in Benson, it was the Democratic defendants on the other side making that very argument. And you were there, so you can tell me why this case is different than that one. Yeah, well, I've given you the three reasons I have for that, and I think, you know, if none of those three distinctions change your mind, then we simply would urge the court not to follow the ruling of the Northern District of Illinois. The third case that you drew our attention to, the Nevada case, Francisco, I'm forgetting what the name of the other party is, I think, articulates right off the bat in quoting from the alliance, articulates the right standard. It applies it, in our view, it goes wrong by applying to demanding a standing test, a pleading test. In Francisco, the court says, citing to the other case you directed our attention at, the Ninth Circuit decision in Arizona Alliance for Retired Parties, the court said that organizations can no longer spend their way into standing based on vague claims that a government action hampers their mission. If further clarified, that the distinctive theory of organizational standing reflected in Haven's realty extends only to cases in which an organization can show that a challenged government action directly injures the organization's preexisting core activities and does so apart from the plaintiff's response to that governmental action. That is, in fact, the correct test under alliance and under the Ninth Circuit's subsequent decision, but what the court then goes on to say is, the amended complaint fails in this case because, although it alleges that, quote, inaccurate voter list information impairs the RNC's ability to form winning strategies, these allegations do not provide any evidence or examples of how voter lists have actually impaired RNC's ability to get voters to register and vote to elect candidates. That is not the pleading standard required in federal court. That is not required in order to establish, for dismissal purposes, a plausible claim of injury and for relief. We think that the District of Nevada got the standard correct with respect to organizational standing, but applied an inappropriately strict standing in terms of what level of detail needs to be pleaded in order to satisfy. Mr. Waxman, I'm going to give you an opportunity to talk about the actual removal issue if you'd like, but just one additional question just so I'm clear as to where we are with respect to standing. Do you concede that Hippocratic Medicine did alter what was thought to be the conventional test for Article III standing, even if you disagree that it changes the result here? Well, I think what I would say is it clarified the standard insofar as it articulated that the rule can't be that you can spend your way into standing, which is essentially what the Alliance alleged in that case, because in that instance, as Justice Kavanaugh pointed out in the majority opinion, any organization could establish standing for itself just by saying, we don't like what this is and we spent a lot of money trying to explain why it's wrong and how people can counteract it or protest against it. So I would say I don't view the Alliance decision as changing the law rather than clarifying it, and I think in particular it was helpful in clarifying the limited, the viability, but limited reach of Haven's Realty. And I think our position is that the molten core of Haven's Realty, which is the provision of a housing counseling service, is in fact in the political world is exactly what the political parties are doing. So that's our position about that. On removal... Can I ask another question about the standing issue? Are you aware we've pointed you to three district court cases post-Alliance that all found that the political party lacks standing? Are there any district court cases that you're aware of that go the other way? Since Alliance? Since Alliance. You know, I'm sure there are, but I've been focused mainly on the Supreme Court's decision in Crawford and the five cases that you've identified. I mean, there's... I can tell you that I, on behalf of the Democratic Party, I'm involved in easily 20 cases right now in which either we or our friends on the other side of the political aisle are parties. And with the exception of this case, in all the cases I'm involved in with the exception of this case, there's not been any question or argument that in those contexts we lack... We or the Republicans lack standing. I mean, Crawford seems to be different because in Crawford it was a case about people being denied access altogether. It wasn't a vote dilution case, right? And this is... All three of the district court cases are voter dilution cases. And Crawford was about a complete potential bar to voting. Well, a bar to voting for some particular voters.  And I think, you know, that is in fact what's going on in this case. You know, whether there is dilution, whether there's a cognizable dilution claim, which is very debatable because dilution has to mean that your vote doesn't count as much as somebody else's. And there's no such argument in this case. If this is a case arguing that 225,000 people should not be allowed to cast regular ballots even though in order to do so, they have to produce both HAVA ID and photo ID. So, I think it is closer to, with all respect to if you feel differently about it, I do think this is pretty close to what the issue is in HAVA. It's a mass removal of people's eligibility to vote or at least vote absent, you know, other than provisionally. But the claim of the appellees is that it's a voter dilution claim. Well, the theory, their representational theory of harm is vote dilution. I accept that. That's simply wrong as a matter of federal and state law, although that's the merits of the case. But the relief that they're seeking, regardless of whatever the various theories were in Crawford and here, the relief being sought is very, very analogous. And therefore, I would think, in terms of the relief being sought is really what is the principal factor in determining the three prongs of Article III injury. I mean, certainly redressability looks to what is being asked to be done and would in order, in the plaintiff's favor, prohibit the harm that will result from what is being asked to be done. Anyway, that's my best shot at this on my feet. Now, on removal, Your Honor, I don't have much more to say than Ms. Boyce said. I think it's clear that removal was proper both under 1441A and 1443-2. I mean, my friend on the other side conceded below, and I think concedes in his papers here, that there certainly is appellate jurisdiction. I'm sorry. I got myself mixed up. As to removal under 1441A, my friend on the other side agrees that the court properly removed Count I, and the court properly declined supplemental jurisdiction, having removed Count I. As to the 1441A claim, which is really what's in dispute here, although, as Ms. Boyce said, Count II nominally asserts a state constitutional claim, the essential predicate of that claim and the entire focus of the complaint is that the state board assertedly violated HAVA, and the Supreme Court has held that federal jurisdiction exists whenever, quote, vindication of a right under state law necessarily turns on some construction of federal law. This case is the clearest, strongest possible example of that. And under 1443-2, again, because the board's refusal is based in part on the NVRA's 90-day ban, which is a law expressly aimed at combating discrimination and unfair registration laws that disproportionately harm racial minorities, this is a heartland case of removal under 1447. The district court's ruling that 1443 can't apply because the language preventing discrimination against racial minorities isn't stated in the particular HAVA section alleged, 303A, is just, I think, controverts the statutory text of 1447-2, 1443-2, which refers to the refusal to violate, quote, authority derived from any law providing for equal rights. They certainly haven't provided any case law support in defense of Chief Judge Meyer's ruling. Indeed, quite to the contrary. I mean, in Rachel itself, the court, although found that the 14th and First Amendments didn't qualify under 1443-2, any cause of action brought under the Civil Rights Act would, where the Civil Rights Act, like HAVA, has only one section where it explains that it is designed to protect against discrimination against minorities. And the Supreme Court's decision in Peacock, this court's decision in Watley and Keefe, and the Second Circuit's decision in the New Haven Firefighters case that's cited in the state's brief, I think all stand for the proposition that it doesn't, 1443-2 is implicated even if the protection against discrimination against racial minorities isn't repeated in each and every section of the law at issue. Without in any way, I hope, straining the court's attention, I just want to say two words about the merits, which only we have briefed. I acknowledge that. The plaintiffs say that this court should not, but not that it cannot, address them. But the imminence of the election, now eight days away, and the corrosive claim that the state board is somehow permitting thousands and thousands of ineligible votes to be cast, counsels just the opposite. And I think what this court, the factors that this court explicated en banc in Manning v. Caldwell a few years ago, applies directly here. The merits of this case have been fully briefed below, and they straightforwardly require dismissal. And this is a legal issue that demands decision. If it goes back to the district court, I think the district court is fully advised under the circumstances. He's already ruled on the merits with respect to count one. But I think it's also fair to say that any ruling that Chief Judge Myers makes will be appealed to this court. And I urge the court to go on and consider the merits. Thank you. Thank you, Mr. Waxman. Mr. Strack? Thank you, Your Honor. Phil Strack, Nelson Mullins. I can confirm, we are all friends. We see each other a lot, and I appreciate seeing you. Your Honor, let me, to start off, I'm happy to take whatever questions you have. Let me just point out what the case is not about. So we are not and have not asked any court to, quote, purge 225,000 voters from the rolls. We have not asked for that. We have not asked to disenfranchise anyone who is properly registered and eligible to vote. So even the district court, when we were back in Wilmington a week, week and a half ago, or whatever it was, seems like yesterday, the district court understood that this lawsuit is about buckets of people. You've got the 225,000 people who the board allowed to register, even though they didn't provide the driver's license or the last four social security numbers. And so the district court judge recognized, well, okay, not all of those people are going to be ineligible. A lot of those people probably had the information that they could have submitted had they been asked, but did not. But then there's going to be a subset of those people who are not eligible to vote. There's going to be a subset. We don't... Mr. Strachan, sorry to interrupt you, but I want to make sure I have the facts right. So you've got this quarter million voters, 225,000 voters, who have... does the record show that they used the form that was incorrect at the time? Yes. Okay. Does the record show that those 225,000 people all omitted the necessary information?  Okay. Yes. And so what we did when we filed the lawsuit is we sent expedited discovery requests to the state board, because we're very interested in what the trial judge was interested in. The question was, well, what subset of these people don't have this information or should have provided it and are not eligible? It could be 2,000. It could be 25,000. We don't know. What we do know is that the state board knows that number. They have the ability to go look at these documents and produce that number. They've just declined to do that. Instead, they were moved to the federal court. How many people have voted? I don't know this, but they may have voted already, right? They may have, and maybe they shouldn't have. Okay. So what do you propose that the district court do with that or the state court do with  We're asking for prospective relief. We're asking the district court is within this bucket of people to ascertain who didn't provide the information, who does not have it, and if they don't have it, are they eligible, figure out that bucket of people, and then in this election, make sure they vote provisionally so that their eligibility can be confirmed before the vote is counted. That's all we're asking to do. To me, it's not a heavy lift. The state board has this information. They can figure out who didn't provide this information. They can ask people who didn't provide it to provide it, say, before the canvas. So, your honor, it's a lot like in North Carolina, we have a photo ID law, and you have to produce your ID. Well, if you don't produce your ID or if you don't sign a reasonable impediment declaration, then you vote provisionally, and for that vote to count, you have to show up before the canvas, and you've got to show your ID or sign the declaration. This is no different than that. All we're asking is that the state board, having acknowledged that the form was incorrect and that there's 225,000 people who did not provide this information, simply ask them, like their ID, have them vote provisionally, notify them, hey, you have to provide this information so that your vote will count, and then, boom, their vote counts. If they're required to provide the ID at the polls, what's the point? So, because providing the driver's license number, because we don't know what ID they're having, college IDs are permissible, there's other IDs, providing the driver's license or the last four, the state board uses that information to confirm citizenship and eligibility, and we don't know if the ID that folks show up with at the election is going to be sufficient for that. All we're asking is that these folks bring the same information that you and I brought when we registered to vote. We brought a driver's license number, we gave the last four the social, and there's 225,000 people who the board acknowledges has not done that, and why should they not have to bring that information before the vote is cast? Why should I have to have provided that information so that my vote counts and they don't have to? Why did the law say there's a 90-day ban? You ask that rhetorically to us? It's a great point, Judge. I appreciate it. It's a great point. So, our position, and if you read the transcript of the trial judge proceedings that we had, you'll see that Chief Judge Myers was sort of thinking about this, too. Our position is that without providing the DL number or the last four, under state law, these people were never properly registered. So, we're not asking anybody to remove anybody, but what we're saying is under state law, these people were never properly registered to begin with, and therefore, they can be asked to provide information and vote provisionally to make sure that they are properly registered. So, we're not purging anybody. Judge, I'm reading directly from your complaint, and it says that your prayer for relief, paragraph 2, page 19 of your complaint says, it's asking the defendants to take all actions necessary to remedy their violations of state law in HAVA, specifically identifying all ineligible registrants and removing them from the state's voter registration list. So, you are seeking removal. Well, we say if feasible. You say in a manner consistent with state and federal law. Exactly. You're asking for removal. Right. So, I'm pretty sure we put if feasible in there somewhere. If federal law, if the court disagrees, so, if these people were never registrants to begin with, and this may go to the point, Your Honor, that we were trying to make in the complaint, if they were never properly registered, then you're not removing them from the rolls. They should have never, it's a nunk-proof-tunk type thing. They should have never been registered from the get-go. So, you're not removing them. Therefore, the NVRA does not apply. But, if the court disagrees with me on that, says, well, no, they're registered, and so we're going to treat them like they're registered, so it's not feasible to remove them, then our alternative claim for relief was to have them vote provisionally and provide the information that state law requires. And, again, this is why, this is all an issue of state law. Who can be properly registered to vote, and under what circumstances, is a matter of state law. And we've cited the statutes, and we've briefed the statutes. It's a matter of state law, and the state constitution, the state courts get to decide whether the state constitution says that if that law is not followed, is there a constitutional harm. And that's what our case is all about. We pled this as a state law case, and that is what it is. There are statutes that say, here's who can be registered, here's who cannot, and we've said, look, there's 225,000 people that have potentially not been properly registered under state law. That's potentially a state constitutional violation. The North Carolina state courts ought to be able to decide that question. And if the NVRA, if federal law says, hey, you can't remove these people, you've put them on the books, so now you can't take them off, if the NVRA says that, that is a perfectly competent issue for the state courts to decide. They're perfectly capable of figuring out whether federal law does or does not allow them to grant whatever relief we want. They're perfectly capable of figuring out whether people can vote provisionally or not. They have that ability to do that because all of the issues you're hearing from my friends are all federal defenses. They're saying, oh, well, yeah, maybe these people were improperly registered or not, doesn't matter, but federal law won't allow us to do what the plaintiffs are asking to do. That's what the state courts are perfectly competent to handle that issue. It doesn't create the cause of action. It's not a substantial federal issue. So, Mr. Strzok, one way to achieve that result is to decide that the federal courts lack Article III standing. What do you think about that? I knew that was coming, and I was trying to forestall it as long as I could. You did a pretty good job. How many minutes into your argument are 12 minutes? I mean, that's the simple answer, right? All right, so I'll give you a lawyer answer. I don't disagree. This is what I'll say about standing. So when we pled the case, we pled it under state standing requirements, okay? Do you think they're any different from the federal standing? Very different, yes, Your Honor, and we've cited the Committee to Elect Dan Forth case, which is sort of the seminal case in North Carolina state jurisprudence. State standing requirements much lower than Article III standing. That's how we pled the case. If I'm guilty of pleading the case to meet state standing requirements, then I'm guilty, all right? Would you plead a federal Article III standing? We did not try to plead an Article III standing. Can you on these facts? Well, if we were allowed to amend the complaint, we potentially could, but we pled it under state standing requirements, which are much lower. So if this court concludes that based on the way we pled it for state standing, it doesn't meet this court's view of Article III standing under the post-Hippocratic case law, then I think the court has to remand the case. I think the court has to remand the case, and this is not an issue that was, of course, briefed or raised below. I appreciate my friends standing up for the standing of the RNC. I'm going to have to remember this. I'm going to have to make some notes. Don't get used to it. But to be clear, could we, if we got another shot, try to make an Article III standing? Sure, I'm sure we could. Well, the problem with that is, as somebody has pointed out, there's, what, five days or not very many days to the election, so not a lot of time. That's true, which is why we need to be back in state court ASAP. And if this court concludes that there is no Article III standing because it's a removed case where we weren't even trying to plead Article III standing. You need to be back in state court for them to determine what the federal law says. No, we would be back in state court to ask them what state law says. Well, the state law, the whole idea of this thing is to protect what's been sort of a history of not-so-perfect protection of voter rights. So you have this 90-day period. Could it be that, in fact, the 90 days is to protect those who, let's say, are eligible? But in the protection of something that's so important, maybe there are people who, as you say, the subset who should never have been so. But isn't that a matter of the importance of what Congress was doing, which is that when you get this close, the right to vote is so important that perhaps some people, some sand may sift through. Your Honor, I'm not going to quibble. I'm asking you, is that? I'm not going to quibble with the 90-day rule. What I'm saying is it doesn't apply here. That's what I'm saying. Because these folks, there's a subset of these folks who never should have been registered to begin with. And so, therefore, they're not subject to the 90-day rule. That's your interpretation. Absolutely. That's right. I'm being a lawyer right now. So asking individuals who think that they have properly registered because they completed the form that was provided by the state to vote provisionally on election day is not a violation of the 90-day rule, in your opinion? No, because in my opinion, respectfully, they were never properly registered to begin with. A subset. A subset. A subset. But the larger group that did properly register is still being required to vote provisionally, and that would not violate the 90-day rule. No, because assuming that the larger group properly registered and has the information that the law requires, their vote's going to count. They're not being removed. Their vote's going to count. When will it count?  It will count. How many days after the election? So what we've asked them to do is, when these folks show up to vote, is to flag them and ask for the information. If they have it, boom, they vote right then and there. If they don't, most of them will, but if they don't, then they vote provisionally, and they show up just like somebody with an ID problem. They show up, and they provide their information during the canvas period, which is generally the ten days after the election. It sort of makes you a second-class citizen. It does not. It does not? No, I totally disagree. You don't picture that as a chilling effect that you come and say, well, you can vote, but we'll get to yours later if we find you can. You don't believe that? I respectfully disagree, Your Honor. I do not believe that at all. It's just like if you forget to bring your ID to the polls, and so you vote provisionally, you show back up to the state board or to the county board, you provide your ID. That's on me if I leave my wallet at home. I don't think that's – Well, but, Your Honor, if they're flagged, and they have to provide their driver's license number or their last four, how many people are going to basically know that right there on the spot, right? They're not going to have to vote provisionally. It's only going to be those people that don't have those numbers or shouldn't have those numbers that are going to have a problem. If I show up at the polls and somebody asks me for my DL number or my last four, it's memorized. I got it. You know, boom, here it is. It's no problem. Okay, here's your ballot. You go vote. It's only going to be folks that don't have the numbers or shouldn't have the numbers that are going to be a problem, and that's probably going to be a reduced subset, as the trial judge recognized. It's going to be a bucket of those people, but you have to ask all of them because the state board did not ask them for it in the form for years. And so they've got to ask them for this information. So, Your Honor, on standing, if the court believes that we didn't plead it for Article III standing, which we didn't try, we plead it for state standing. Maybe you answered this, but I'll try it again. Do you think you pleaded for Article III standing? I will say that we were not trying to plead Article III standing. That's not the question I asked. Do you think you have pled sufficient Article III standing? I think at a minimum we probably have organizational standing because the state GOP has members. Every registered Republican in the state of North Carolina is considered a member of the NCGOP, and I think certainly individuals would have standing. So I think we have organizational standing, but we don't have any individual plaintiffs, obviously. Well, I think you were describing associational standing there. I get them confused, Your Honor. Whichever one depends on the members, that's the one I'm talking about. All right. Anything else? I have a question about the 1443 removal. Yes. So in your brief you argued that the NBRA is not a civil rights statute, but the defendants removed the case pursuant both to the NBRA and to the materiality provision of the Civil Rights Act of 1964. Is your argument that the Civil Rights Act of 1964 is not an equal rights law within the meaning of 1443? Your Honor, we are relying on the district court's analysis, which primarily focused on the NBRA. That is the provision that they are claiming they are refusing to act under because of this 90-day period and removing people, et cetera. We think that's the operative provision, and we don't see any language regarding racial equality in the NBRA itself. They removed based on both provisions, though. Well, the court addressed it based on the NBRA because that's what they were saying was their basis for refusing to act, which is what 1443-2 requires. Anything else, Judge Byrne? No. Thank you, Your Honor. Ms. Boyce? Thank you, Your Honors. To Judge Byrne's point, I do just want to take significant issue with the notion that plaintiffs are not asking for a purge here. They repeatedly ask for that in their complaint, including in the paragraph that Your Honor has pointed to, as well as paragraph 71, where they say, if defendants do not remove ineligible voters from the state's voter rolls, so on and so forth. The district court also understood their complaint the same way and said on JA-561, page 3 of his order, plaintiffs seek a court order that defendants remedy their prior noncompliance, including by either removing any ineligible voters. So I don't think there's any question here that what they have asked for is a purge. I think both this court's order issued yesterday in the Virginia case and the briefs filed by Amiki in this particular case go to great lengths to explain why, in fact, that would violate the NVRA. And I don't believe that those opinions can be reconciled with Mr. Schreck's interpretation, whereby if you shouldn't have been registered in the first place and are taken off, that does not count as a removal. I do think, however, that if we focus on this idea of the purge and the extent to which that would redress the injury, that does help take us back to the standing question that this court has been so interested in. So if one of the remedies that the plaintiffs are seeking is the removal of these names, and I don't think we would disagree that, at least theoretically, setting aside the NVRA, this court has the authority to order such relief, that would then take all of these voters who they argue are casting a cloud over the voter rolls off the list and mitigate or remove the burden that they allege in their complaint that they have suffered. So they would then have a clean voter list that doesn't include any of these voters who maybe are ineligible, maybe are eligible, it's not clear, and thus they could proceed to engaging in the activities they list in paragraphs 12, 14, and 15 of their complaint without the confusion or the ambiguity that they allege our registration of these voters has caused. So again, to go back to the idea of the text messages, the mailers, the knocking on the doors, all of which they do. They don't specifically mention text messages in the mailers, of course, but they do talk about getting out the vote, organizational efforts, counseling voters, recruiting voters. Those kinds of activities would be made less burdensome, in their view, under the theory of their case that they have submitted in their complaint, if they then have a clean list that does not have voters that they're not sure whether to target because they don't know whether or not they are qualified or not. So I think working backwards from the idea of what that relief would do for them, at least under their theory of the case, it does help illuminate and underscore exactly the injury that they are alleging in their complaint, whether they're walking away from it now or not. I'm confused. You should be sitting over there. I'm doing my best, Your Honor. I do think, to my friend here, Mr. Waxman's point, that it would be a perverse result indeed if in a case where Section 1443 makes it very clear that the appropriate forum for protecting civil rights and for protecting voters is a federal court, if Sandy could somehow become a sword that is used to force us back into state court and sort of circumvent Congress's will in terms of where these cases end up. I agree with Mr. Waxman that case law is not entirely clear as to how standing should work in a case like this one where we are the ones invoking the federal court's jurisdiction, but I would certainly submit that it would be passing strange if Congress could make so clear that this is the appropriate forum, both under 1441 and 1443, and yet we end up back in state court. It may be the appropriate forum, but the question is are the appropriate parties before us, right? And so that's what standing is about. I think that's right, Your Honor, but again, Congress has given a clear direction that in instances where civil rights are under threat, federal court is sometimes the best protector of those civil rights, and there doesn't seem to be any question here that where we will head next, if this court declines jurisdiction, is to state court. So again, that would flip 1443 on its head and lead to exactly the result that that statute seems determined to avoid. Again, the question... Right, yeah, I guess maybe you're making assumptions, maybe you're not, about what the result will be in state court. I don't mean to make assumptions, Your Honor, but I certainly embrace the notion that sometimes, particularly in a case like this one that implicates a range of different federal laws, that sometimes the federal courts are best suited as the forum for such disputes. I don't disagree with my friend, Mr. Strack, that our state court is capable of resolving such disputes, but I do think that Congress, both in the NVRA, in HABA, and in the removal statutes that we've been discussing, has made clear that federal court is the appropriate forum for this kind of dispute. Right, and you mentioned our decision yesterday, and I was on that panel, but of course, we made a point of explaining why standing was appropriate in that case. And it can't be the case that every civil rights case has to be in federal court, no matter which party appears on either side of the V, right? There's got to be some limit such as who can walk into the door of federal court. That is certainly true, Your Honor. We don't mean to suggest that Article III does not still apply here, with the caveat, again, that it's not entirely clear how it works in this particular situation. But for all of the reasons that we've already explained under Haven's Realty, and the close analogy between that case and this case, and the reasons that both I and Mr. Waxman have given for distinguishing the opinions that Your Honors have drawn our attention to, we would certainly submit that they have cleared the bar that is set forth in Haven's Realty, as clarified by the Alliance case here, and thus that Article III standing is satisfied. You might have said guys and gals. My apologies. I did not mean to use either phrase. Your Honors feels more appropriate. Thank you, Your Honors. Thank you, Ms. Boyce. Just a couple of points. First of all, we do not agree, and we don't think that the State Board has held that the prior form was actually illegal or didn't satisfy HAVA. As you can see on page 10 of our principal brief before you, this form not only provided a place for entering the driver's license and last four digits, it said if you have a North Carolina's driver's license or a non-operator ID number, provide this number. If you do not have a North Carolina driver's license or ID card, then provide the last four digits of your Social Security number. If you have neither a North Carolina driver's license, an ID card, or a Social Security number, and then it goes on to give you a bunch of other options. HAVA and the State statute that incorporates it acknowledges that there will be instances in which if you don't provide either, the State Board gives you a number and then, and this is key, requires you the first time that you vote to present HAVA-sufficient identification. North Carolina, you are now subject to the additional requirement that you provide photo ID, and the notion that you can be required to make a provisional ballot is utterly wrong as a matter of federal law, state law, and common sense. First of all, when you go to make a, when you file a provisional ballot and you go to the canvas, you are providing exactly what North Carolina law requires you and federal law requires you to present if you vote having registered without providing these two numbers. Now, let's remember what we're talking about here. These are people who complied with the State form. They signed a certification under oath that they are qualified and eligible to vote as United States citizens resident in North Carolina. The state, the local county election boards have responsibility, federal responsibility, delegated to them from the State Board under state law to examine each registration application and make a determination whether the voter is or isn't eligible. All of that was done in this case, a case in which there is not a single allegation that there is in fact anybody who is ineligible to vote among the 225,000, much less has voted, notwithstanding the requirement that they produce this. And federal law and state law prohibit, and I can give the court the citations, prohibit requiring a provisional ballot. The section 163.166.12e of the North Carolina statute says that there is no provisional voting required if HAVA ID is presented at the time you appear. HAVA itself in sections 1083B2B and 21082A says the same thing. Interestingly, my friend Mr. Strack was talking about how if you provide these numbers then all you have to do is show up and recite the numbers again by heart if for some reason you have to. North Carolina law, and now we're talking about section 166.12d, provides that even somebody who fills in the driver's license and last four, let's say the state board can't match them, even those people can vote, not provisionally, but vote on election day providing that they have HAVA ID. And in addition, requiring a provisional ballot from a voter who is entitled to or otherwise qualified to vote, which under North Carolina law means you are in the state's role of registered voters, violates the Voting Rights Act. That's 52 U.S.C. section 103.07a. Thank you. Thank you, Mr. Waxman. As is our tradition, we'll come down and recount so we understand that this case is, the clock is ticking and so we'll get a decision out to you as quickly as we can. I thank both parties for their fine arguments. Come down and greet counsel and adjourn court until tomorrow morning. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Albert Diaz, Roger L. Gregory, Nicole G. Berner